was filed approximately eighteen months after Lomnicki's contact with Jane had been terminated. Jane points us to no authority—and we have found none—that supports the proposition that her constitutional right to be free from sexual abuse at the hands of a school official may be violated by the long-after-the-fact filing of an erroneous or even false report of the abuse.

Finally, Jane does not allege that defendant Kment violated her right to be free from sexual abuse by a school official. It is undisputed that Jane cannot identify any of the dates on which Lomnicki allegedly abused her. It is undisputed that defendant Kment was not aware of any of Lomnicki's history of alleged misconduct with female students. Defendant Kment learned no earlier than the beginning of January 1993, of the police investigation into Lomnicki's alleged abuse of Sarah Williams. By early March, Kment had removed Lomnicki from the classroom. There is no dispute that Kment had no knowledge of Lomnicki's alleged abuse of Jane until the end of 1994. The facts as Jane portrays them do not demonstrate any causal connection between any action or inaction of Kment and any injury to Jane, and therefore do not allege a violation of any constitutional right.

## CONCLUSION

Because we conclude that Jane has failed to allege the violation of an actual constitutional right by any of these defendants, we **REVERSE** the judgment of the district court denying the motions of the defendants for summary judgment on grounds of qualified immunity. We **REMAND** the matter to the district court for further proceedings consistent with this opinion.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0234P (6th Cir.)
File Name: 02a0234p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

SALLY DOE, as Next Friend of
JANE DOE, a minor,
          *Plaintiff-Appellee,*

          *v.*

CITY OF ROSEVILLE, Roseville
Community Schools; JOHN
KMENT; FRANK MAYER;
BETTY SLINDE; LEROY
HERRON; DOROTHEA SUE
SILAVS, in their individual
and official capacities, jointly
and severally,
          *Defendants-Appellants.*

No. 01-1385

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-72751—Arthur J. Tarnow, District Judge.

Argued: December 6, 2001

Decided and Filed: July 16, 2002

Before:  SILER and BATCHELDER, Circuit Judges;
HOOD, District Judge.[*]

———————————

**COUNSEL**

———————————

**ARGUED:**   Daniel J. Kelly, COX, HODGMAN & GIARMARCO, Troy, Michigan, for Appellants. Thomas W. Stephens, GOODMAN, LISTER, SEIKALY & PETERS, Detroit, Michigan, for Appellee. **ON BRIEF:** Daniel J. Kelly, COX, HODGMAN & GIARMARCO, Troy, Michigan, for Appellants. Thomas W. Stephens, GOODMAN, LISTER, SEIKALY & PETERS, Detroit, Michigan, Julie H. Hurwitz, Detroit, Michigan, for Appellee.

———————————

**OPINION**

———————————

ALICE M. BATCHELDER, Circuit Judge.  Defendants Betty Slinde, Frank Mayer, Leroy Herron, John Kment and Dorothea Sue Silavs, appeal the district court's order denying them summary judgment on qualified immunity grounds on the claims against them in their individual capacities under 42 U.S.C. § 1983.  Those claims allege that these individual defendants deprived Jane Doe, a minor, of her constitutional right to be free from sexual abuse at the hands of a public school teacher.  Because we conclude that, as to these individual defendants, Jane has not alleged the violation of an actual constitutional right, we will reverse the district court's judgment.

———————————

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

these defendants did or did not do encouraged Lomnicki's abuse of Jane, constituted participation in that abuse, or authorized, approved or knowingly acquiesced in it. *Id*.

Viewed from the perspective of the twenty-first century, the responses of these three defendants to reports of Lomnicki's conduct are disturbing.  Hindsight reveals that Lomnicki was a pedophile.  But our task is not to reconstruct the reality of Lomnicki's proclivities.  Our task is to determine whether defendant Slinde, a quarter of a century ago, defendant Mayer, in 1979 and 1988, and defendant Herron, in 1988, were confronted with conduct that was "obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences," *Braddy*, 133 F.3d at 802, or with "such a widespread pattern of constitutional violations," *Claiborne County*, 103 F.3d at 513, that their actions demonstrated deliberate indifference to the danger of Lomnicki's sexually abusing students.  We hold that they were not.  We cannot weave the threads of such a pattern on the loom of hindsight, and the facts as Jane portrays them do not demonstrate anything more than negligence on the part of these defendants.  Although Jane had a constitutional right to be free from sexual abuse at the hands of a school teacher or official, she did not have a constitutional right to be free from negligence in the supervision of the teacher who is alleged to have actually abused her.  Negligence is not enough to impose section 1983 liability on a supervisor. *Clairborne County*, 103 F.3d at 513.

The remaining two defendants, Kment and Silavs, were employees of the Roseville School District at the time that Jane was allegedly abused by Lomnicki.  As is the case with defendants Slinde, Mayer and Herron, we conclude that the facts as portrayed by Jane do not demonstrate that Kment or Silavs deprived Jane of a right protected by the Constitution.  Defendant Silavs simply had no connection whatsoever with Lomnicki's abuse of Jane.  Silavs filed a report with the Department of Social Services, advising that Jane claimed to have been abused by her reading teacher—whom Silavs' report did not name—and indicating concern that the abuse might be coming from someone in Jane's home.  This report

of what they might see." *Id.* at 651 (internal quotation marks and citations omitted). The Eleventh Circuit has held that

> [s]upervisor liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he [she] fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences.

*Braddy v. Florida Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998); *but see Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001) (noting that personal involvement of a supervisory official may be established by, among other things, "deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring.").

Applying those standards of supervisory liability to the defendants whose appeals are before us here, we conclude, as we did in *Claiborne County*, that the facts as the plaintiff portrays them do not support a claim that these defendants deprived her of a right secured by the Constitution. Turning first to Slinde, Mayer and Herron, the three defendants who were no longer employed by the Roseville School District at the time that Jane was allegedly abused by Lomnicki, we conclude that the facts as Jane presents them do not demonstrate as to any of these defendants, that the information he or she possessed about Lomnicki "showed a strong likelihood that he would attempt to sexually abuse other students, such that the failure to take adequate precautions amounted to deliberate indifference to the constitutional rights of students." *Clairborne County*, 103 F.3d at 513 (internal quotation marks omitted). Nothing that

## PROCEDURAL HISTORY

In 1999, the plaintiff, Sally Doe ( "Sally"), as Next Friend of Jane Doe ("Jane"), a minor, filed this action on behalf of Jane against the Roseville Community Schools and a number of individuals in both their official and individual capacities, raising claims under 42 U.S.C. § 1983, Title IX, 20 U.S.C. § 1681(a), and various state laws for the alleged sexual abuse of Jane during 1992 and 1993. The defendants include Betty Slinde, who retired in 1986 from her position as principal of Fountain Elementary School in the Roseville School District; Frank Mayer, who retired from his position as Superintendent of the Roseville Schools sometime after 1988 and before 1992; Leroy Herron, former Assistant Superintendent of Roseville Community Schools who retired after 1988 but before 1992; Dorothea Sue Silavs, Roseville's Director of Special Education at the time of the alleged sexual abuse; John Kment, Superintendent of Roseville Community Schools during the alleged abuse; and John Lomnicki, Jane Doe's Chapter I reading teacher.

As we understand the complaint, Jane claims that defendant Lomnicki had a history of sexually molesting his students, and that school officials both failed to take action against Lomnicki and attempted to cover-up his history; that Lomnicki sexually molested Jane during 1992 and 1993; and that the defendants' actions and failures to act violated Jane's constitutional and statutory rights.

After extensive discovery had been conducted, the defendants—other than Lomnicki— moved for summary judgment on the § 1983 and Title IX claims.[1] The district court heard oral argument and denied the motion. Before us on appeal is the district court's denial of summary judgment on qualified immunity grounds to defendants Slinde, Mayer, Herron, Silavs and Kment.

---

[1] According to the defendants' motion for summary judgment, only the § 1983 and Title IX claims remained against these defendants, the others apparently having been dismissed.

## STATEMENT OF FACTS

Lomnicki was hired as a Fountain Elementary School teacher by Roseville Community Schools in 1960. Although there is evidence that Lomnicki repeatedly molested a young male student in the mid-sixties, the Appellee does not claim that the school district was ever made aware of this conduct. The misconduct material to this appeal began in the mid-seventies.

Beginning with the 1975-76 school year, several fourth- and fifth-grade girls complained that Lomnicki had touched their legs when they were wearing dresses and put his hand down the back of their pants and up their dresses. According to one of the girls, when her father discussed the situation with then-principal Slinde, Slinde told him that "she did not see how it could be possible." Slinde testified that she spoke with Lomnicki and warned him to be very careful not to touch any children inappropriately, but she did not follow up with that particular parent, she did not document the incident or report it to anyone, and on her retirement, she destroyed all of her files, including any contemporaneous notes she might have made regarding this incident.

The following year, several fourth-grade girls alleged that Lomnicki had put his hands up their shirts and dresses, touched their buttocks, rubbed their backs, and made them sit on his lap during school in front of other children. One of these girls testified that Slinde had questioned each of them and told them that "she didn't want to hear anymore talk about it [Lomnicki's touching] and that [they] weren't to talk about it to anyone, not to tell [their] parents and if [they] continued to talk about it, then Mr. Lomnicki would get in a lot of trouble, go to jail and die there."

Other incidents involved two fifth-grade girls, one of whom was in a classroom alone when Lomnicki came in behind her, put pieces of candy in her mouth and in each of her hands and then pulled her shirt tight and made comments about how her breasts had grown. The second girl alleged that Lomnicki had on several occasions grabbed the inside part of her leg, stuck

abuse showed a strong likelihood that he would attempt to sexually abuse other students, such that the failure to take adequate precautions amounted to deliberate indifference to the constitutional rights of students." *Claiborne County*, 103 F.3d at 513 (internal quotation marks omitted). Put another way, we said, the plaintiff must show that the "defendants' conduct amounted to a tacit authorization of the abuse." *Id.* (citing *Bellamy*, 729 F.2d at 421). We concluded that

> [d]efendants here were simply not confronted with such a widespread pattern of constitutional violations that their actions or inactions amounted to a deliberate indifference to the danger of Davis sexually abusing students. The steps they did take, and even those they failed to take and arguably should have taken, do not show that they "encouraged the specific incident of misconduct or in some other way directly participated in it." Nor did they authorize, approve, or knowingly acquiesce in Davis's unconstitutional conduct. They had no knowledge, constructive or otherwise, that Davis was abusing Doe.

*Id.* (internal citations omitted).

More recently, in *Shehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999), we again addressed the issue of supervisory liability in the context of a § 1983 action. We held that liability must be based on "active unconstitutional behavior," and that a mere failure to act was not sufficient. In the absence of any allegation that the supervisors had "participated, encouraged, authorized or acquiesced in" the offending conduct, we held that the supervisors had, as a matter of law, "neither committed a constitutional violation nor violated a clearly established right." *Id.* at 300.

Other circuits have made even stronger statements with regard to supervisory liability. In *Chavez v. Illinois State Police*, 251 F.3d 612 (7th Cir. 2001), for example, the Seventh Circuit held that "to be liable for the conduct of subordinates, a supervisor must be personally involved in that conduct," and "supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear

other than Jane; she argues that defendant Silavs violated that right by filing a report containing false information with regard to Lomnicki's alleged abuse of Jane herself. By their action or inaction, Jane contends, each of these defendants demonstrated deliberate indifference to the risk of harm to the school district's children and to Jane. Our inquiry, then, is whether Jane has alleged the deprivation of a constitutional right *by these defendants*.

Regardless of how Jane attempts to characterize the liability of these defendants, it is undisputed that but for the actions of Lomnicki, Jane would have suffered no injury. This case, therefore, falls squarely within the purview of this circuit's decision in *Claiborne County*. In that case, the plaintiff claimed that school administrators had failed to take appropriate action with regard to allegations that a teacher had engaged in sexual misconduct with a number of students other than the plaintiff; that the inaction amounted to deliberate indifference to the plaintiff's constitutional rights; and the administrators were therefore individually liable for the deprivation of the plaintiff's right to be free from the sexual abuse inflicted upon her by that teacher. Because the plaintiff sought to hold school administrators individually liable for constitutional injury caused directly by someone else, we held that "'supervisory liability' standards apply to resolve the claim[s]." *Claiborne County*, 103 F.3d at 513. Without reaching the defendants' claims of qualified immunity, we dismissed the plaintiff's claims because the facts did not support a claim of constitutional violation against the defendants.

The supervisory liability standards that we applied in *Claiborne County* are rooted in two prior cases: *Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984), and *Barber v. City of Salem, Ohio*, 953 F.2d 232 (6th Cir. 1992). We noted that under that precedent, it is not enough for the plaintiff to show that the defendant supervisors were sloppy, reckless or negligent in the performance of their duties. Rather, we said, "[a] plaintiff must show that, in light of the information the defendants possessed, the teacher who engaged in sexual

his hand down her top all the way to her pants and rubbed her vaginal area, and picked her up by the waist, spit the gum he had been chewing into her mouth, and stuck his tongue into her mouth to obtain her gum. It does not appear from the statements and testimony of these two girls that they reported these incidents to anyone. It is undisputed, however, that Slinde did not relay the complaints that were reported to her to anyone in the administration of the school district, nor did she discipline Lomnicki in any way.

Sometime after these incidents, Lomnicki was transferred to Kaiser Elementary School, but the school was not notified of the verbal warning given to him by Slinde. In 1979, Superintendent Mayer was advised that Lomnicki had fondled the breasts of four sixth-grade girls. Mayer investigated the matter and concluded that Lomnicki exercised "poor judgment." Mayer placed a written reprimand—in a sealed envelope—in Lomnicki's personnel file admonishing him and reminding him that "you are not to straighten clothing or pick up jewelry from beneath a sweater or blouse or to touch students in a way which could be misinterpreted by them or their parents." Lomnicki was warned that "[f]uture instances of poor judgment on your part may result in more severe disciplinary action up to and including discharge."

Following this incident, Lomnicki was transferred to Arbor Elementary School, where he was assigned to a federally funded remedial reading program ("Chapter I"), in which he taught individual students, one at a time, in a private classroom. The officials at this school were not told of either the warning by Slinde or the written reprimand from Mayer. There were no reported incidents at Arbor Elementary School until nine years later when, in 1988, several sixth-grade girls reported to the school's principal that Lomnicki had been hugging them in front of other students, giving them back rubs, placing his hands in their pockets, and forcibly holding their hands between his. The principal reported the allegations to Assistant Superintendent Leroy Herron and Superintendent Mayer. Herron investigated the matter and placed a written reprimand—again in a sealed envelope—in

Lomnicki's file, classifying the incident as "poor judgment" and warning Lomnicki that he was not to hug or put his hands on students in a manner that may be misconstrued by the students or their parents. Because some of the girls were giggling when Herron confronted them and did not give concrete answers to his questions, and because Lomnicki had plausible explanations for all of his conduct, Herron did not think that there was enough evidence for this incident to be considered child abuse. He did acknowledge that this was Lomnicki's second warning and recommended that in the future, Lomnicki "should not attempt to straighten out sweaters or blouses of [his] students."

Superintendent Mayer sent a confidential memo to the school board members and the school district's attorney informing them of Lomnicki's reprimand and the 1979 incident. He advised that Herron had met with Lomnicki, and that Mayer would notify the Macomb County Child Abuse Office, place a reprimand in Lomnicki's file, and immediately transfer Lomnicki. Lomnicki was indeed transferred—to Eastland Elementary School—but again, school officials were not informed of Lomnicki's history. Again, Lomnicki was assigned to the Chapter I program.

Jane, born in 1987, encountered Lomnicki when she entered kindergarten at Eastland in 1992, and began receiving individualized reading instruction from him. Jane claims that on at least five separate occasions, Lomnicki sexually abused her. According to Jane, Lomnicki had a mask, a rope and a small wooden bat on each of those occasions. The abuse included Lomnicki's removing her clothing; touching her private parts with his hands and penetrating her vagina with his fingers; taking her into the boys' bathroom and, while wearing the mask, tying her wrists with rope, gagging her, hanging her from a hook on the door and hitting her with a small wooden bat; and—this time in the library—while again wearing a mask, putting his finger in her vagina and slapping her in the face. Jane claims that none of this abuse left any marks or bruises on her body, and that she did not tell anyone about these incidents because Lomnicki threatened to kill her

including, among other notable precedent, *Ingraham v. Wright*, 430 U.S. 651 (1977), in which the Supreme Court "declared that '[a]mong the historic liberties' protected by the Due Process Clause is the right against 'unjustified intrusions on personal security' at the hands of the state." *Claiborne County*, 103 F.3d at 506 (quoting *Ingraham*, 430 U.S. at 673). We concluded that, although we had not theretofore addressed the precise issue, every circuit to do so had held that the Due Process Clause of the Fourteenth Amendment protects the right of a child to be free from sexual abuse inflicted by a public school teacher. *Id.* And we declared that "[sexual abuse under color of law] is so contrary to fundamental notions of liberty and so lacking of any redeeming social value, that no rational individual could believe that sexual abuse by a state actor is constitutionally permissible under the Due Process Clause." *Id.* at 507. Accordingly, we hold that at the time that Jane was allegedly abused by Lomnicki, her constitutional right to be free from such abuse was clearly established.

But this does not end the inquiry. Jane's claims against Lomnicki are not before us in this appeal, and her complaint does not contain any claim that any of these defendants physically abused her. Although her complaint appears to premise the liability of these defendants on their failure to supervise Lomnicki adequately, she does not advance that claim before us here. Rather, according to Jane's brief on appeal, she seeks to impose direct personal liability on defendants Slinde, Mayer, Herron, Silavs and Kment for violating her constitutional right to be "safe in school," a right which she claims has been established since 1949 and for which, remarkably, she cites *Wolf v. Colorado*, 338 U.S. 25, 27-28 (1949).

For purposes of this appeal, we will assume that Jane's claims are in fact premised upon her right to be free from sexual abuse at the hands of a school official or teacher. Jane argues that defendants Slinde, Mayer, Herron and Kment violated that right by failing to take appropriate action in response to reports of Lomnicki's alleged abuse of children

party, likely assumed." *Id*. Interpreting *Johnson*, this circuit has held that "[t]he question whether the uncontested facts demonstrated a constitutional violation is a pure question of law—and one from which an immediate appeal can be taken where qualified immunity has been denied." *Turner v. Scott*, 119 F.3d 425, 428 (6th Cir. 1997). Further, we have said that "[t]he district court's assertion that there were genuine issues of material fact does not, standing alone, destroy the appealability of a qualified immunity ruling." *Id.*

In the case before us, the district court did not identify the facts that it assumed when it denied summary judgment to each of the five defendants claiming qualified immunity. Rather, it denied summary judgment because there were "underlying factual disputes as to the qualified immunity." Accordingly, we may review de novo the district court's decision to determine whether, viewing the facts as the plaintiff portrays them, the defendants are entitled to qualified immunity as a matter of law.

### B. Qualified Immunity

This is an interlocutory appeal of the denial of qualified immunity to each of the defendant school officials. Because qualified immunity is immunity from suit as well as from liability, we begin our review by determining "whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, . . . whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999). Here, the plaintiff's complaint claims that Jane was deprived of her right "not to have her bodily integrity violated by physical sexual abuse by a school employee."

This circuit held in *Doe v. Claiborne County, Tenn.*, 103 F.3d 495 (6th Cir. 1996), that "a schoolchild's right to personal security and to bodily integrity manifestly embraces the right to be free from sexual abuse at the hands of a public school employee." 103 F.3d at 506. In arriving at that holding, we discussed at some length the "impressive constitutional pedigree" of the right to bodily integrity, *id.*,

if she did. Jane was unable to provide even approximate dates for any of the alleged incidents of abuse, and specifically, there is no evidence from any source that Lomnicki abused Jane during the period from January 1993, when school officials first learned that Lomnicki was under criminal investigation, until March 1993, when he was removed from the classroom (as we more fully explain below).

In late 1992 and early 1993, April Stamevski, one of the girls Lomnicki had allegedly abused in the mid-seventies, learned that Lomnicki was teaching at Eastland Elementary School, the elementary school for the area in which Stamevski lived. Outraged, she went door-to-door to the families with children who lived on her street to warn them about Lomnicki. One of the parents whom she told about Lomnicki's abuse of her was Sally, Jane's mother. Although Stamevski did not mention the abuse in front of Jane, Sally questioned Jane about whether anyone other than Sally or Jane's sister had ever touched her in her private areas. Jane denied that anyone had.

In light of Stamevski's warning, Sally went to the school and questioned Principal Susan Enke about it. Enke apparently said that nothing of that sort happened in her school and that she would not remove Jane from Lomnicki's supervision. However, in that meeting, Enke alluded obliquely to a current criminal investigation of Lomnicki. This investigation was into charges that from 1982 until 1984, Lomnicki had molested his neighbor, Sarah Williams, who was then in the fourth and fifth grades. Apparently, Lomnicki had tutored Williams in math in her bedroom with the door closed, and during those closed-door sessions, he engaged in conduct ranging from kissing her to performing oral sex on her. Although Williams's mother had on one occasion found Williams on Lomnicki's lap, when Williams told her mother—after approximately one year of Lomnicki's "tutoring"—about the abuse, the mother did not believe her and did nothing about her report of abuse. It was not until 1992 that Williams went to the police about Lomnicki. As a

result of the ensuing investigation, Lomnicki was convicted of criminal sexual conduct and sentenced to 18 to 36 years' imprisonment.

Sally's meeting with Enke apparently occurred around the same time that school officials were first becoming aware of Sarah Williams's complaint. While the exact date is not clear from the record before us, it appears that Superintendent Kment learned that the police were investigating Lomnicki when the police requested Lomnicki's personnel file in January or February of 1993. Because Lomnicki was a tenured teacher, the school district's attorney, Ronald Greve, expressed reservations about whether the district had authority to suspend Lomnicki on the basis of the police report in the Williams matter. In early March of 1993, however, Lomnicki was removed from direct contact with students and given administrative duties in the school district's central office. The investigation into Williams's charges of sexual abuse became public in mid-March 1993.

Despite the publicity in 1993, Jane did not tell anyone about Lomnicki's actions until November 1994, when Sally again questioned Jane about whether someone had touched her. Jane initially denied it, but eventually, apparently in a highly agitated state and clutching a book that Lomnicki had given her, she told her mother that "the man that gave me this book is the man that hurt me."[2]

Sally reported Jane's allegations to school officials in December 1994. Director of Special Education Dorothea Sue Silavs filed a report with the Michigan Department of Social Services in which she stated that the alleged perpetrator of abuse was unknown but might possibly be in the household. The report noted further that

---

[2]During this time, Jane apparently displayed evidence of an abused child. She expressed anger by destroying toys, experienced nightmares, and was chronically fatigued. She was later diagnosed with Attention Deficit Hyperactivity Disorder (ADHD).

[s]tudent has recently alleged that a reading teacher abused her two years ago, but circumstances are unlikely and child is inconsistent. Investigation reveals child was evaluated and certified emotionally impaired and evaluation revealed reports of "Chuck Norris hurts me when he touches my private parts." Concern that child being abused but by whom? Someone at home?

Because of the Williams case and Jane's complaint, Dr. Emmanuel Tanay performed a psychological evaluation on Lomnicki in March 1995, at which time Lomnicki retired from the school district. The following month, Lomnicki was convicted of first and second degree criminal sexual conduct in the Sarah Williams case.

## ANALYSIS

### A. Jurisdiction

As a threshold matter, we must determine whether we have jurisdiction over this appeal. In *Johnson v. Jones*, 515 U.S. 304 (1995), the Supreme Court held that the district court's denial of summary judgment because the facts material to the defense of qualified immunity were in dispute was not subject to interlocutory review. 515 U.S. at 313. However, the Supreme Court acknowledged in *Behrens v. Pelletier*, 516 U.S. 299 (1996), that *Johnson* could not be read to mean that every denial of summary judgment is nonappealable. 516 U.S. at 313. Rather, "*Johnson* reaffirmed that summary judgment determinations *are* appealable when they resolve a dispute concerning an 'abstract issu[e] of law' relating to qualified immunity." *Id.* (quoting *Johnson v. Jones*, 515 U.S. at 317). Moreover, in *Johnson*, the Court determined that when a denial of summary judgment based on qualified immunity involves a legal question, a court of appeals may "take, as given, the facts that the district court assumed when it denied summary judgment for that (purely legal) reason." *Johnson*, 515 U.S. at 319. But if the district court does not identify those facts, the appellate court must "undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the non-moving