RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0112p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

JOHN DOES 1–5,

        *Plaintiffs-Appellants*,

    *v.*

GRETCHEN WHITMER; RICHARD DALE SNYDER; JOSEPH GASPAR; KRISTE KIBBEY ETUE,

        *Defendants-Appellees*.

No. 22-1925

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:21-cv-11903—Victoria A. Roberts, District Judge.

Argued: May 3, 2023

Decided and Filed: May 30, 2023

Before: BOGGS, McKEAGUE, and THAPAR, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ARGUED:** Paul Matouka, OLIVER LAW GROUP, P.C., Troy, Michigan, for Appellants. Scott L. Damich, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees. **ON BRIEF:** Paul Matouka, Alyson Oliver, OLIVER LAW GROUP, P.C., Troy, Michigan, for Appellants. Scott L. Damich, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

─────────────────

## OPINION

─────────────────

BOGGS, Circuit Judge. Five sex offenders allege that the Michigan State Police (MSP) continued to enforce provisions of Michigan's Sex Offender Registration Act (SORA) against them even after federal courts declared those provisions unconstitutional. In this 42 U.S.C.

§ 1983 action, the plaintiffs seek damages from high-ranking Michigan officials, alleging that they oversaw and failed to stop the police's unconstitutional actions.  The district court dismissed the complaint on various grounds, including sovereign immunity, and the plaintiffs appealed.  We affirm, but on different grounds than the district court.  The district court properly granted the motion to dismiss because the plaintiffs fail to state a claim of supervisory liability.

I

Michigan passed SORA in 1994, then amended it twice: in 2006 and again in 2011.  SORA and its amendments imposed a variety of obligations on Michigan sex offenders, including registration requirements, restrictions on living and working in a school zone, and reporting requirements.  Michigan retroactively imposed these obligations, including those contained in the amendments, on offenders convicted before 2006 and 2011.

In two previous suits, two sets of plaintiffs claimed that SORA was unconstitutional. In the first suit, filed in March 2012, four plaintiffs sought declaratory and injunctive relief.  *John Does 1–4 v. Snyder* (*Does I*), 932 F. Supp. 2d 803, 807 (E.D. Mich. 2013).  The district court held at the motion-to-dismiss stage that: (1) plaintiffs plausibly stated a claim that the school-zone provisions and some reporting requirements were unconstitutionally vague, in violation of the Fourteenth Amendment; (2) plaintiffs plausibly stated a claim that some of SORA's reporting requirements violated the First Amendment; and (3) the retroactive application of SORA amendments did not violate the Ex Post Facto Clause.  *Id.* at 814, 821–23.  We reversed, holding that retroactive application of SORA did violate the Ex Post Facto Clause. *Does #1–5 v. Snyder* (*Does I on appeal*), 834 F.3d 696, 706 (6th Cir. 2016).  But we did not address the other constitutional issues.  *Ibid.*

Days after our decision, in August 2016, a second set of plaintiffs filed a class action challenging SORA on the same constitutional grounds as those raised by the plaintiffs in *Does I*. *Doe v. Snyder* (*Does II*), 449 F. Supp. 3d 719 (E.D. Mich. 2020).  In February 2020, the district court granted summary judgment in favor of the plaintiffs, holding that: (1) retroactive application of any SORA provision violated the Ex Post Facto Clause; (2) the school-zone provisions and some reporting requirements were unconstitutionally vague; and (3) some of the

reporting requirements violated the First Amendment. *Id.* at 735–36. But the district court delayed entry of final judgment, first giving the parties a month to formulate a proposed form of judgment, and then entering an interim order to provide a temporary solution during the COVID-19 pandemic. *Doe v. Snyder*, 606 F. Supp. 3d 608, 613 (E.D. Mich. 2021). While this interim order was in effect, Michigan passed a new (fourth) version of SORA, which became effective on March 24, 2021. *Ibid.* This new SORA removed or modified the provisions that *Does II* had declared unconstitutional.[1] *Ibid.* On August 4, 2021, the district court entered final judgment in *Does II*.

On August 17, 2021, John Does 1–5, five Michigan sex offenders, filed their complaint in this class-action lawsuit, challenging Michigan's enforcement of SORA for a third time. They sued Michigan Governor Gretchen Whitmer, former Michigan Governor Richard Snyder, Joseph Gaspar, the current MSP director, and Kriste Etue, the former MSP director, seeking damages under 42 U.S.C. § 1983. The plaintiffs allege that the MSP enforced unconstitutional provisions of SORA against them from 2006 onwards, including after *Does I*, *Does I on appeal*, and *Does II* were decided. And they allege that the defendants, whom they purport to sue "in their individual capacities," knew that the invalidated provisions were unconstitutional, but failed to stop their subordinates from enforcing them against the plaintiffs.

More specifically, the plaintiffs point to the governors' duty under the Michigan Constitution to ensure the faithful execution of federal and state law and argue that the governors are "ultimately responsible" for enforcing the law and supervising state departments. They allege that the police directors knew that SORA was unconstitutional and knew that their subordinates continued to enforce SORA, but that they "failed to terminate" their subordinates' application of SORA. The failure of the police directors to instruct their subordinates as to the unconstitutionality of SORA, they say, "encouraged and implicitly authorized the continued violations" of the plaintiffs' rights. And the governors similarly "failed to terminate the unconstitutional application of SORA" despite their alleged knowledge of its unconstitutionality.

---

[1]The new SORA is the subject of separate litigation. *See Doe*, 606 F. Supp. 3d at 613.

As for their injuries, the named plaintiffs allege, in relevant part, that they were required to register with the MSP. But the complaint specifically alleges that only one named plaintiff, John Doe 3, traveled "to the State Police" to register, without specifying with whom the other named plaintiffs registered. John Doe 3 was allegedly confronted at his home "by Sheriffs." In other instances, the complaint uses the passive voice, alleging that plaintiffs were required to register, denied a job, forced to leave an apartment, caused to live in a hotel, prevented from purchasing a home, or prevented from obtaining employment—without specifying who allegedly violated the plaintiffs' rights.[2]

The district court granted the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The court held that: (1) Michigan's three-year statute of limitations for personal-injury claims barred any claims based on conduct that occurred before August 17, 2018; (2) Whitmer and Snyder could not be held liable under § 1983 for supervising the MSP, but Etue and Gaspar could; (3) all defendants were entitled to sovereign immunity; and (4) the defendants were not entitled to qualified immunity as to the plaintiffs' timely Ex Post Facto Clause claims, but were entitled to qualified immunity as to any First and Fourteenth Amendment violations that were not clearly established.[3]

We review grants of motions to dismiss de novo. *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 701 (6th Cir. 2020). When reviewing a district court's dismissal under Rule 12(b)(6), we accept all well-pleaded allegations as true and ask whether the complaint states a plausible claim for relief. *BNA Assocs. LLC v. Goldman Sachs Specialty Lending Grp.*, 63 F.4th 1061, 1064 (6th Cir. 2023). We may affirm the district court's dismissal for failure to state a claim for any reason supported by the record, even on grounds different from those on which the

---

[2]At oral argument, counsel for plaintiffs explained that the complaint made these allegations in the passive voice because the plaintiffs were seeking class-wide relief. Oral Arg. at 4:20–6:30. Counsel also represented that sex offenders could register at either local or state police stations. Oral Arg. at 6:00–6:15; *see also* Mich. Comp. Laws § 28.725(1) (2021) (repealed 2021) ("An individual required to be registered under this act . . . shall report in person and notify the registering authority . . . ."); *id.* § 28.722(n) ("'Registering authority' means the local law enforcement agency or sheriff's office having jurisdiction over the individual's residence."); *id.* § 28.722(k) ("'Local law enforcement agency' means the police department of a municipality.").

[3]Because the district court held that sovereign immunity independently barred the plaintiffs' remaining claims, the district court declined to decide on which date the First and Fourteenth Amendment violations became clearly established.

district court relied.  *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 785 (6th Cir. 2016).

II

The state defendants urge us to affirm the district court's dismissal on sovereign-immunity grounds.  It is true that we treat sovereign immunity as a "jurisdictional bar" that, "once raised as a jurisdictional defect, must be decided before the merits." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015).  However, if a state does not invoke sovereign immunity as a threshold defense, we may address the sovereign-immunity defense and the merits in whichever order we prefer.  *Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 476–77 (6th Cir. 2006).  "[U]sually," a state seeking to assert sovereign immunity as a threshold defense will move to dismiss under Rule 12(b)(1).  *Id.* at 476.  By contrast, a state that raises sovereign immunity as an alternative ground for dismissal is not invoking sovereign immunity as a threshold defense.  *Id.* at 477.

Here, the state defendants did not raise sovereign immunity as a threshold defense.  The defendants raised sovereign immunity in a motion to dismiss under Rule 12(b)(6), not Rule 12(b)(1).  Moreover, their motion offered arguments on the merits as alternative grounds for dismissal.  The district court, too, addressed the merits before turning to the defendants' immunity defenses, relying on sovereign immunity alone to dismiss only a sliver of plaintiffs' claims—claims against Gaspar and Etue for Ex Post Facto Clause violations that occurred after August 17, 2018, and for any violations that occurred after the unconstitutionality of SORA's amendments on First and Fourteenth Amendment grounds became clearly established.  Accordingly, we are free to address the merits before sovereign immunity.  *Ibid.*

Resolving this case on the merits is "more straightforward." *Ibid.*  The sovereign-immunity issue in this case is complex.  Sovereign immunity bars official-capacity suits for damages, but not individual-capacity suits for damages.[4]  *Lewis*, 581 U.S. at 161–63.  Here, the

---

[4]Official-capacity actions are actions that, although nominally against the official, are "in fact . . . against the official's office and thus the sovereign itself." *Lewis v. Clarke*, 581 U.S. 155, 162 (2017).  Individual-capacity suits, by contrast, "seek to impose *individual* liability upon a government officer for actions taken under color of state law." *Ibid.* (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

plaintiffs claim that they are suing the defendants in their individual capacities, but we may not take their word for it.**[5]** *Id.* at 162. ("[C]ourts may not simply rely on the characterization of the parties in the complaint . . . ."). Instead, we must "look to whether the sovereign is the real party in interest," by determining, "in the first instance whether the remedy sought is truly against the sovereign." *Id.* at 161–62. But figuring out from whom plaintiffs truly seek damages is not always easy, not least because the Supreme Court has instructed us to disregard any possible indemnification of officials by the state. *Id.* at 166–68. Nor does the fact that an official acts in her official capacity, within her authority, within the scope of her employment, or in a manner necessary to fulfill governmental responsibilities mean that she cannot be sued in her individual capacity. *Id.* at 163–64; *Hafer*, 502 U.S. at 27–29. Despite the Supreme Court's repeated attempts at clarification, the distinction between individual- and official-capacity suits "continues to confuse lawyers and confound lower courts."**[6]** *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "We need not wade into this swamp, however, because a close reading of the plaintiffs' complaint makes clear that plaintiffs have failed to state a claim against the . . . [d]efendants in their individual capacities." *Native Am. Distrib. v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1297 (10th Cir. 2008).

---

**[5]**The academic literature suggests that, in practice, courts often do take plaintiffs at their word. *See* Jesse H. Choper & John C. Yoo*, Who's Afraid of the Eleventh Amendment? The Limited Impact of the Court's Sovereign Immunity Rulings*, 106 Colum. L. Rev. 213, 227 (2006) ("[T]he reality is that [the distinction] may be resolved by properly styling the complaint."); John C. Jeffries, Jr., *In Praise of the Eleventh Amendment and Section 1983*, 84 Va. L. Rev. 47, 63–68 (1998). That practice—of accepting properly pleaded individual-capacity suits—may explain why there are so few cases that address this issue.

**[6]**Few of our sister circuits have proposed tests for distinguishing between individual- and official-capacity actions. *See Cunningham v. Lester*, 990 F.3d 361, 366 (4th Cir. 2021); *Attwood v. Clemons*, 818 F. App'x 863, 871–72 (11th Cir. 2020) (Grant, J., concurring in part). These tests accentuate rather than resolve the difficulty of distinguishing between the two categories of suits and may, in part, run counter to the Supreme Court's guidance in *Hafer* and *Lewis*. *See Cunningham*, 990 F.3d at 366 (applying a test that asks: "(1) were the alleged unlawful actions of the state officials tied inextricably to their official duties; (2) if the state officials had authorized the desired relief at the outset, would the burden have been borne by the State; (3) would a judgment against the state officials be institutional in character, such that it would operate against the State; (4) were the actions of the state officials taken to further personal interests distinct from the State's interests; and (5) were the state officials' actions *ultra vires*" (quoting *Martin v. Wood*, 772 F.3d 192, 196 (4th Cir. 2014)); *Attwood*, 818 F. App'x at 871–72 (Grant, J., concurring in part) (distinguishing between suits targeting "the individual behavior of an official . . . as he carries out his state duties," and suits targeting the "enforcement of, or action carrying out, a government policy").

III

The plaintiffs seek to hold the defendants liable on a theory of supervisory liability.  They allege that the defendants knew that SORA was unconstitutional but failed to stop their subordinates from enforcing the statute against the plaintiffs.

To state a claim of supervisory liability under § 1983, plaintiffs must plausibly allege that a defendant "authorized, approved, or knowingly acquiesced in the unconstitutional conduct . . . of his subordinates through the execution of his job functions." *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) (quoting *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016)).  Each government official is liable only for her own misconduct, not for that of her subordinates. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Crawford*, 15 F.4th at 761.  To survive a motion to dismiss, a plaintiff must plausibly allege "active unconstitutional behavior," which goes beyond "a mere failure to act."  *Crawford*, 15 F.4th at 761 (quoting *Peatross*, 818 F.3d at 241); *cf. Helphenstine v. Lewis County*, 60 F.4th 305, 321 (6th Cir. 2023) (affirming grant of summary judgment to supervisor where there was no evidence that supervisor directed, authorized, or acquiesced in unconstitutional conduct).  We require "more than an attenuated connection" between the injury and the supervisor's wrongful conduct.  *Peatross*, 818 F.3d at 241.  Sloppiness, recklessness, or negligence is insufficient to establish liability. *See Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 866 (6th Cir. 2020).  But deliberate indifference, knowing acquiescence, tacit or implicit authorization, or failure to take precautions against likely violations may suffice.[7] *Id.* at 865; *Gardner v. Evans*, 920 F.3d 1038, 1051 (6th Cir. 2019); *Peatross*, 818 F.3d at 242; *Doe ex rel. Doe v. City of Roseville*, 296 F.3d 431, 439 (6th Cir. 2002).

The plaintiffs do not plausibly allege that the defendants authorized, approved, or knowingly acquiesced in any unconstitutional conduct.  Consider first their allegations against the MSP directors, Etue and Gaspar.  The plaintiffs allege that Etue and Gaspar knew that their subordinates were violating the plaintiffs' constitutional rights, but failed to intervene, and that

---

[7]In addition to a defendant's active involvement in the constitutional violation, a plaintiff must also plausibly allege a "causal connection" between the defendant's unconstitutional behavior and the plaintiff's injuries. *Crawford*, 15 F.4th at 761–62 (quoting *Peatross*, 818 F.3d at 242).  The challenged conduct must be both the but-for cause and the proximate cause of the alleged injuries.  *Ibid.*  Causal weaknesses are more often dispositive at summary judgment, *Garza*, 972 F.3d at 868, and we resolve this case on lack of active involvement alone.

this failure encouraged and implicitly authorized the alleged constitutional violations.  On these allegations, there can be no question that Etue and Gaspar "authorized" or "approved" the challenged conduct, since failing to intervene is not the same as affirmatively granting authorization.  That leaves theories of liability that include knowing acquiescence, implicit authorization, and deliberate indifference.  To show that Etue and Gaspar had knowledge of the alleged constitutional violations, the plaintiffs point to the decisions in *Does I*, *Does I on appeal*, and *Does II*.  But *Does I* and *Does I on appeal* established only that Michigan had violated four individual plaintiffs' rights, not that MSP was continuing to violate the rights of other sex offenders, and final judgment in *Does II* (August 4, 2021) was not issued until after Michigan had amended SORA to remove the challenged provisions (March 24, 2021).  *Cf. Crawford*, 15 F.4th at 767 (rejecting an attempt to impute knowledge of constitutional violations to a state official on the basis of ongoing litigation against companies that provided healthcare to state prisoners).  And while Etue and Gaspar oversaw the MSP, many of the complaint's allegations appear to target the behavior of local law enforcement, which the MSP directors did not supervise.  The plaintiffs' allegations of knowledge thus cross the line from conceivable to plausible only barely, if at all.  *See Iqbal*, 556 U.S. at 680.

Even if the plaintiffs plausibly allege that Etue and Gaspar knew of ongoing constitutional violations, their allegations that the directors acquiesced in or implicitly authorized those violations are wholly conclusory.  The plaintiffs allege that Etue and Gaspar failed to instruct their subordinates on the unconstitutionality of SORA and that, by failing to act, they encouraged and implicitly authorized the continued enforcement of SORA.  But alleging a mere failure to act, without more, is insufficient to state a claim of supervisory liability.  *Crawford*, 15 F.4th at 761.

To see why the allegations here are insufficient, consider recent cases in which plaintiffs sufficiently pleaded supervisory-liability claims based on knowing acquiescence.  The plaintiff in *Peatross* sued the director of the Memphis Police Department on a supervisory-liability theory over the department's use of excessive force.  818 F.3d at 238.  The complaint alleged that the director "acknowledged a dire need" to review the department's operations, was "publicly admonished" by the mayor, but gave police officers the "green light" to violate the civil rights of

citizens.  *Id.* at 243.  The plaintiffs alleged that the director failed to train and supervise officers to avoid using excessive force, failed to investigate allegations of excessive force, and attempted to cover up constitutional violations of his subordinates.  *Ibid.*  We held that the complaint sufficiently alleged knowing acquiescence.  *Id.* at 243–44.

In *Garza*, a plaintiff sued school principals, among others, on a supervisory-liability theory for a teacher's alleged abuse of a student.  972 F.3d at 859.  The complaint alleged that the principals had received multiple, specific reports that the teacher had been abusive, but took no action, did not report any abuse to child welfare, or acted to conceal the abuse.  *Id.* at 868–71.  We held that the complaint plausibly alleged that, by failing to take adequate precautions to address the possibility of future abuse, the principals had acquiesced in the teacher's abusive conduct.  *Id.* at 869, 871.

The allegations here are a far cry from those in *Peatross* and *Garza*.  The plaintiffs here do not allege that they told Etue and Gaspar that the MSP was violating their rights, that the directors acknowledged problems, or that they attempted to cover up constitutional violations.[8] Nor do they claim that the directors received reports that the plaintiffs' rights—as opposed to the rights of the four individual plaintiffs who prevailed in *Does I* and *Does I on appeal*—had been or were being violated and failed to take precautions against likely future violations.  Instead, the plaintiffs complain only that Etue and Gaspar failed to act and that the directors' failure encouraged MSP officers to continue violating the plaintiffs' rights.  Even drawing all reasonable inferences in the plaintiffs' favor, the complaint's allegations against the MSP directors fail to state a claim of supervisory liability.  The district court's ruling on this point was erroneous.

However, the district court correctly dismissed the plaintiffs' supervisory-liability claims against Whitmer and Snyder.  The two governors are even further removed from the alleged injuries than the MSP directors.  The only connection between the governors and the alleged injuries is the governors' generalized responsibility to enforce the law and their supervisory authority over the MSP.  That connection is too "attenuated."  *Peatross*, 818 F.3d at 241.  Governors may not be held liable for the unconstitutional conduct of their subordinates on a

---

[8]When asked at oral argument, counsel for the plaintiffs could not say whether any sex offender asked the governors to prevent the MSP from enforcing SORA against them.  Oral Arg. at 2:35–3:20.

theory of *respondeat superior*. *Iqbal*, 556 U.S. at 676; *Peatross*, 818 F.3d at 241. The plaintiffs argue that Whitmer and Snyder should have issued an "executive order, policy directive, or other communication" instructing the MSP not to enforce SORA, but those allegations, like those against the MSP directors, merely charge the governors with a failure to act, which is not enough. *Crawford*, 15 F.4th at 761; *Helphenstine*, 60 F.4th at 321. Therefore, the plaintiffs also fail to state a claim of supervisory liability against the governors.[9]

The plaintiffs resist this conclusion by pointing to their allegations that the governors were aware that their subordinates continued to enforce the invalidated portions of SORA, not least because the governors were subject to a "never-ending barrage of lawsuits." But the complaint alleges knowledge based on *Does I*, *Does I on appeal*, and *Does II* alone. The decisions that the plaintiffs cite in their briefing to the district court and on appeal—but not in their complaint—prevented Michigan from applying some portions of SORA to individual plaintiffs and declared other portions of SORA facially unconstitutional. Unlike these decisions, *Does I on appeal* merely prevented the retroactive application of SORA's amendments to four individual plaintiffs and neither opined on whether Michigan was unconstitutionally applying the amendments to other sex offenders nor indicated that the MSP would continue to do so in the future. 834 F.3d at 706. *Does I*, which granted in part and denied in part a motion to dismiss, did not definitively determine that any portion of SORA was unconstitutional. 932 F. Supp. 2d at 824. And the decision in *Does II*, which granted class-wide relief, became final only after the Michigan legislature had already removed the offending parts of SORA. Thus, despite the plaintiffs' assertions to the contrary, this case is different from *Peatross*, where the complaint alleged that the supervisor had been warned repeatedly of a pattern of constitutional violations. *See* 818 F.3d at 243. We do not say that plaintiffs can never plausibly allege knowing acquiescence or deliberate indifference by pointing to a pattern of past or ongoing litigation. But the three decisions that the plaintiffs cite in their complaint are insufficient.

---

[9]Because we conclude that plaintiffs fail to state a claim of supervisory liability against either group of defendants, we need not address whether the defendants are entitled to qualified immunity.

IV

Because the plaintiffs fail to state a claim of supervisory liability, the district court properly dismissed the complaint under Rule 12(b)(6).  We **AFFIRM** the judgment of the district court.