RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0022p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

AMMEX, INC.,

*Plaintiff-Appellant*,

*v.*

GARY MCDOWELL, Director for the Michigan
Department of Agriculture & Rural Development,

*Defendant-Appellee*.

No. 20-1250

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:18-cv-10751—Laurie J. Michelson, District Judge.

Argued: March 9, 2021

Decided and Filed: February 3, 2022

Before: GRIFFIN, WHITE, and BUSH, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Leah A. Mintz, DUANE MORRIS LLP, Philadelphia, Pennsylvania, for Appellant. Elizabeth A. Morrisseau, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Leah A. Mintz, Robert M. Palumbos, DUANE MORRIS LLP, Philadelphia, Pennsylvania, for Appellant. Elizabeth A. Morrisseau, Danielle Allison-Yokom, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

WHITE, J., delivered the opinion of the court in which GRIFFIN and BUSH, JJ., joined. BUSH, J. (pg. 17), delivered a separate concurring opinion.

---

**OPINION**

---

HELENE N. WHITE, Circuit Judge.  Plaintiff-Appellant Ammex, Inc. (Ammex) appeals the district court's dismissal of its amended complaint.  Ammex seeks to prevent Defendant-Appellee Michigan Department of Agriculture and Rural Development (MDARD) from enforcing a federal gasoline-volatility regulation against it, arguing that the regulation is inapplicable to export-only gas stations and conflicts with the customs statute that authorizes Ammex's duty-free status.  For the reasons below, we AFFIRM.

**I.**

Ammex owns and operates a duty-free gas station that is located in Wayne County, Michigan, near the bridge to Canada, but positioned "beyond the exit point" for domestic commerce established by the United States Customs and Border Protection (CBP).  This litigation began in 2012, when MDARD sought to enforce an Environmental Protection Agency (EPA) rule requiring gas stations in Wayne County to dispense low-pressure gasoline in the summer.  MDARD, in conjunction with the EPA, implemented this rule to bring Southeast Michigan's ozone levels into compliance with the Clean Air Act.  Because of its unique location and certain sales privileges granted to it by United States customs law, Ammex has resisted efforts to apply the rule to its gasoline sales.

This is the second time these parties have been to this court to dispute MDARD's enforcement of the rule against Ammex.  We first addressed this dispute in 2019, when we determined that MDARD was enforcing federal regulatory law, and accordingly was not in violation of the Supremacy Clause or dormant Foreign Commerce Clause.  We now review Ammex's updated challenges: first, that the environmental rule, properly construed, does not apply to Ammex; and second, that the customs statute giving Ammex the right to sell duty-free goods supersedes the environmental regulation and renders it unenforceable against Ammex.

**A.**

We begin with a review of the environmental laws at issue in this case.[1]  In 1970, Congress amended the Clean Air Act (CAA) to direct the EPA to establish National Ambient Air Quality Standards (NAAQS) for certain air pollutants.  *See* 42 U.S.C. § 7409.  "Although the [NAAQS] are set federally, the 'primary responsibility for assuring' they are met lies with the States."  *Sierra Club v. Korleski*, 681 F.3d 342, 343 (6th Cir. 2012) (quoting 42 U.S.C. § 7407(a)).  The CAA thus directs each state to propose a state implementation plan (SIP) that "specif[ies] the manner in which national . . . ambient air quality standards will be achieved and maintained" in that state.  42 U.S.C. § 7407(a).  SIPs are subject to EPA approval, and after the appropriate time for notice and public comment, the EPA publishes notice of approved SIPs in the Federal Register.  *Id.* § 7410(h)(1), (k)(1)(B), (k)(3).

In 1990, Congress again amended the CAA to, among other things, set a national Reid Vapor Pressure (RVP)[2] standard of 9.0 pounds per square inch (psi) for gasoline sales during certain times of the year.  *See id.* § 7545(h).  Congress prohibited states from setting a different RVP standard, *see id.* § 7545(c)(4)(A)(ii), unless the EPA finds the deviation "necessary" to achieve a NAAQS and approves the modified standard in the state's SIP.  *See id.* § 7545(c)(4)(C)(i) (noting that a deviation is "necessary" if "no other measures that would bring about timely attainment exist, or if other measures exist and are technically possible to implement, but are unreasonable or impracticable").

In 2004, the EPA designated eight counties in southeast Michigan, including Wayne County, as "nonattainment" areas for the ozone national ambient air quality standards.  Approval and Promulgation of Air Quality Implementation Plans; Michigan; Control of Gasoline

---

[1]Much of the statutory and regulatory background in this case is identical to that discussed in our 2019 decision *Ammex, Inc. v. Wenk* (*Ammex II*), 936 F.3d 355 (6th Cir. 2019).  Accordingly, we have borrowed from the fact section in that decision where appropriate.

[2]RVP "is a measure of a gasoline's volatility at a certain temperature and is a measurement of the rate at which gasoline evaporates and emits [volatile organic compounds]."  Approval and Promulgation of Air Quality Implementation Plans; Michigan; Control of Gasoline Volatility, 71 Fed. Reg. 46879, 46880–81 (Aug. 15, 2006).  "Lowering RVP in the summer months can offset the effect of high summer temperatures upon the volatility of gasoline, which, in turn, lowers emissions of [volatile organic compounds]" that contribute to the production of ground level ozone.  *Id.* at 46881.

Volatility, 71 Fed. Reg. 46879 (Aug. 15, 2006).  In response, Michigan enacted House Bill 5508, which amended Mich. Comp. Laws (MCL) § 290.650d (hereinafter the "Summer Fuel Law") to limit the RVP for gasoline sold within those eight counties during the summer months.  The Summer Fuel Law states:

> Beginning June 1 through September 15 of 2007 and for that period of time each subsequent year, the vapor pressure standard shall be 7.0 psi for dispensing facilities in Wayne, Oakland, Macomb, Washtenaw, Livingston, Monroe, St. Clair, and Lenawee counties.

MCL § 290.650d.  The law defines "dispensing facility" as "a site used for gasoline refueling." *Id.* § 290.642(m).  MDARD is responsible for enforcing this law.  *Id.* § 290.647.  The EPA Administrator, concluding that Michigan's proposed seasonal 7.0 RVP standard for the designated counties was "necessary" to achieve the national air quality standard for ozone, approved the Summer Fuel Law and incorporated it by reference into the Code of Federal Regulations at 40 C.F.R. § 52.1170.  *See* 72 Fed. Reg. 4432, 4434–35 (Jan. 31, 2007) (announcing plan approval and amendment of § 52.1170).

**B.**

Ammex operates a duty-free store and gas station at the foot of the Ambassador Bridge, which connects Detroit, Michigan to Windsor, Ontario.  Although physically located in Wayne County, Michigan, Ammex is strategically placed at the base of the bridge, beyond a United States Customs "exit point" so that after filling up their gas tanks, consumers have "no practical alternative" but to merge onto the Bridge and exit the United States.  *See* 19 C.F.R. § 19.35(d)**.** This location makes Ammex a "border store" within the meaning of United States customs regulations and gives Ammex its unique competitive advantage: because Ammex exclusively sources its gasoline from foreign trade zones, under United States federal customs law, the gasoline it sells never enters domestic commerce.  *See* 19 U.S.C. § 1555.  Accordingly, Ammex can sell its gasoline duty and tax free.  *See* 19 U.S.C. § 1555(b)(1) ("Duty-free sales enterprises may sell and deliver for export from the customs territory duty-free merchandise in accordance with this subsection and such regulations as the Secretary may prescribe to carry out this subsection.").  Within the comprehensive statutory scheme governing duty-free stores, known as

the Warehousing Act, is the following statute describing warehousing procedures for dutiable merchandise:

> Any merchandise subject to duty (including international travel merchandise), with the exception of perishable articles and explosive substantives other than firecrackers, may be entered for warehousing and be deposited in a bonded warehouse at the expense and risk of the owner[,] purchaser, importer, or consignee. Such merchandise may be withdrawn . . . for exportation to a foreign country . . . without the payment of duties thereon, or for transportation and rewarehousing at another port or elsewhere, or for transfer to another bonded warehouse at the same port[.]

*Id.* § 1557(a)(1) (entitled "Entry for Warehouse," subtitled "Withdrawal of merchandise; time, payment of charges," and referred to hereinafter as "the Withdrawal Statute"). Congress defines "merchandise" as "goods, wares, and chattels of every description." *Id.* § 1401(c). Merchandise is "subject to duty" if Congress has designated it as dutiable in the Harmonized Tariff Schedule of the United States ("Harmonized Tariff Schedule"). *Id.* § 1500(b) (providing that CBP "shall, under rules and regulations prescribed by the Secretary [of the Treasury,] . . . fix the final classification and rate of duty applicable to . . . merchandise"); *see also id.* § 1202 (noting that a "current version of the Harmonized Tariff Schedule is maintained and published periodically by the United States International Trade Commission and is available on their website").

Ammex began selling gasoline in the late 1990s and sells about 400,000 gallons of gasoline each month. In 2000, Ammex successfully sued CBP for the right to sell its gasoline and diesel fuel duty-free. *Ammex, Inc. v. United States*, 24 C.I.T. 851, 857 (Ct. Int'l Trade 2000) (*Ammex I*). Ammex represents that it is the only store in the United States that sells duty-free gasoline.

## C.

In the summer of 2012, MDARD tested Ammex's gasoline and found that it had an RVP that exceeded the Summer Fuel Law's 7.0 psi requirement. MDARD issued a stop-sale order preventing Ammex from selling the non-compliant gasoline. MDARD filed an action against Ammex in state court, and the parties eventually reached a settlement that (1) required Ammex to sell gasoline that complied with the 7.0 RVP standard between June 1 and September 15 of

each year; and (2) provided that the state court retained jurisdiction to enforce the settlement agreement for three years. Ammex sold gasoline that complied with the Summer Fuel Law during the summers of 2013 through 2017.

In 2018, Ammex began having trouble sourcing conforming gasoline from a foreign source. Facing the prospect of either losing its duty-free status or paying significant daily fines to MDARD, Ammex petitioned the federal district court for an order enjoining MDARD from enforcing the Summer Fuel Law against it. Ammex alleged that MDARD's attempts to enforce the Summer Fuel Law, which it conceptualized as state law, violated both the dormant Foreign Commerce Clause and the Supremacy Clause.

The district court rejected Ammex's claims, finding that it had not shown a likelihood of success on the merits. This panel heard the appeal from that decision. *Ammex II*, 936 F.3d at 355. For different reasons, both the majority and the concurring judge agreed with the district court's disposition. *Id.* The majority held that the Summer Fuel Law is a federal law, and therefore Ammex was not likely to succeed on its claim that the Summer Fuel Law violated the dormant Foreign Commerce Clause or the Supremacy Clause. *Id.* at 362–63. The concurring judge, agreeing with the judgment only, would have held that the Summer Fuel Law is a state law but that it neither offends the dormant Foreign Commerce Clause nor is preempted by federal law. *Id.* at 363–72 (Bush, J., concurring in the judgment).

Back in the district court to litigate the merits of its claims, Ammex amended its complaint. It retained its Foreign Commerce Clause and Supremacy Clause arguments (Counts I and II) and added two more claims: (1) that even if the Summer Fuel Law is federal law, the law does not apply to Ammex's duty-free operations because fuel that is "for export only" is not subject to the regulation (Count III); and (2) that even if the Summer Fuel Law is a federal law, and even if it encompasses the store's duty-free activities, it is an environmental regulation that conflicts with a federal customs statute and must accordingly give way (Count IV).

MDARD filed a motion to dismiss under Rule 12(b)(6), which the district court granted. Addressing Ammex's original Foreign Commerce Clause and Supremacy Clause arguments, which Ammex did not amend in light of our 2019 decision, the district court dismissed them "for

the reasons provided by this Court and the Court of Appeals." Op. and Order Granting Def.'s Mot. to Dismiss, R. 61, PID1447. Addressing Ammex's two new claims, the district court first held that the Summer Fuel Law unambiguously encompasses Ammex's fueling operations, and, even if the court were to look past the unambiguous text, Ammex has not plausibly alleged that the law does not apply to it. Addressing Ammex's second new claim, the district court found that the Summer Fuel Law does not conflict with federal customs law, and that both laws can and should be given effect.

Ammex timely appealed.

## II.

The court reviews de novo a district court's dismissal of a complaint for failure to state a claim under Rule 12(b)(6). *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (citation omitted). We view the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and look to see whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## A.

Ammex's amended complaint maintains its dormant Foreign Commerce Clause and Supremacy Clause claims (Counts I and II). We addressed, and rejected, the merits of those claims in Ammex's appeal of the district court's denial of a preliminary injunction. *Ammex II*, *passim*. Ammex maintained those claims in the amended complaint because the panel's prior ruling was not a final ruling on the merits and so it could "preserve them for further appeal." Appellant's Br. at 19. Since the parties do not advance or develop any new arguments on either front, we hold that these arguments fail to state a claim for the reasons stated in our prior opinion. *See Ammex II*, *passim*.

**B.**

Ammex next argues that the Summer Fuel Law does not apply to its fueling activities regardless of whether it is a state or federal law (Count III).  Ammex contends that, despite the text of the Summer Fuel Law applying to all "dispensing facilities" in "Wayne County," a 1989 EPA notice of final rulemaking reveals that gas sold "for export only" is exempted from RVP standards like the Summer Fuel Law.  Appellant's Br. at 30 (citing Volatility Regulations for Gasoline and Alcohol Blends Sold in Calendar Years 1989 & Beyond, 54 Fed. Reg. 11868, 11871 (Mar. 22, 1989) [hereinafter "1989 EPA Notice"]).  The 1989 EPA Notice, in response to a commenter concerned about refiner liability for fuel destined to be shipped abroad, explains that

> Because gasoline is defined in [40 C.F.R. § 80.2(c)] as "any fuel sold in any State," gasoline which is exported is not covered by the volatility regulations. However, EPA will assume that all gasoline found in the United States is intended for domestic sale and thus subject to the RVP standards unless the product is clearly labeled as for export only, and the evidence supports this classification. The label should further clearly state that the product may not comply with Federal RVP standards.  If such product enters the domestic market (e.g. is on route to or at a distribution facility that is supplying fuel domestically, or at a retail outlet or wholesale purchaser-consumer facility) and is found to exceed the applicable RVP standard, all parties will be presumed liable . . . .

1989 EPA Notice.  The Notice additionally clarifies that the prohibited activities include "sell[ing], offer[ing] for sale, supply[ing], offer[ing] for supply, [] transport[ing], [and] . . . dispens[ing] gasoline with excessive volatility into motor vehicles." *Id.* at 11872.

In Ammex's view, because its gas "never enters and is not sold in the domestic stream of commerce," the Summer Fuel Law does not apply to its gas sales in light of this regulatory history.  Appellant's Br. at 29–30.

The district court concluded that it need not evaluate the 1989 EPA Notice because the statute regulating dispensing facilities in Wayne County plainly and unambiguously applies to Ammex, a dispensing facility in Wayne County.  The district court further concluded that were it necessary to reach beyond the Summer Fuel Law's text, the EPA's 1989 EPA Notice does not favor Ammex for two reasons: because (1) the EPA issued a letter in November 2019

[hereinafter "the 2019 EPA Letter"] interpreting both the 1989 EPA Notice and the Summer Fuel Law and informing Ammex[3] that it considered the gas station to be "within the state of Michigan, and therefore [regulated by] federal volatility standards"; and (2) the 1989 Notice "ma[d]e it clear that it is a violation for any of the listed parties to dispense gasoline with excessive volatility into motor vehicles," and "even restricting the analysis to the EPA's 1989 Notice, it is not plausible . . . that the refueling that occurs at Ammex [] is exempt from the RVP standards." *Id.* at 1451–52 (quoting Reply to Resp. re Mot. to Dismiss, R. 58, PID 1404; 1989 EPA Notice).

We agree with the district court that it is not necessary to reach beyond the text of the Summer Fuel Law. It states:

> Beginning June 1 through September 15 of 2007 and for that period of time each subsequent year, the vapor pressure standard shall be 7.0 psi for dispensing facilities in Wayne, Oakland, Macomb, Washtenaw, Livingston, Monroe, St. Clair, and Lenawee counties.

MCL § 290.650d (40 C.F.R. § 52.1170). The law further defines the term "dispensing facility" to mean "a site used for gasoline refueling." *Id.* § 290.642(m). Ammex does not dispute that it is a retail-gasoline-refueling station located in Detroit, Michigan, which is in Wayne County. Therefore, the district court did not err in finding that Ammex has not plausibly alleged that its activities are not covered by the Summer Fuel Law. As the Supreme Court recently explained in *Kisor v. Wilkie*, a court may not look beyond a regulation's text to the agency's intent "unless the regulation is genuinely ambiguous. If uncertainty does not exist, there is no plausible reason for deference. The regulation then just means what it means—and the court must give it effect, as the court would any law." 139 S. Ct. 2400, 2415 (2019). More forcefully put, "if there is only one reasonable construction of a regulation—then a court has no business deferring to any other reading, no matter how much [one might] insist[] it would make more sense." *See id.* Ammex does not argue on appeal that there are multiple constructions of the Summer Fuel Law's plain

---

[3]As the district court explained, "[w]hile this litigation was progressing, Ammex reached out to the EPA to see if the EPA thought that the RVP standards for gasoline applied to the gas it sold at its duty-free store. And the EPA responded." Op. and Order Granting Def.'s Mot. to Dismiss, R. 61, PID 1451.

text.   Nor could it, as there are not multiple constructions.   Accordingly, we hold that the Summer Fuel Law unambiguously applies to Ammex.

## C.

### 1.

Ammex next argues that, even if its activities are within the scope of the Summer Fuel Law, the Summer Fuel Law cannot be enforced against Ammex because it is an environmental *regulation* that must yield to a federal customs *statute* (Count IV).   Ammex describes the conflict as follows: "Congress has given Ammex, as a duty-free store, the right to sell '*any* merchandise subject to duty' of '*every* description.'   Yet the EPA adopted regulations that *limit* the type of merchandise Ammex can sell for 3½ months of every year."   Appellant's Br. at 17–18 (citing with emphasis 19 U.S.C. §§ 1401(c), 1557(a)(1)).   According to Ammex, "[t]he EPA regulation therefore conflicts with the customs statute and, under established precedent, is void as applied to Ammex."   *Id.* (citations omitted).

Ammex is correct that regulations that contain provisions "manifestly contrary" to statutes must "give way" at the point of conflict.   *See R.R. Ventures, Inc. v. Surface Transp. Bd.*, 299 F.3d 523, 549 (6th Cir. 2002) (noting a "clear conflict" between a transportation statute that "does not require the offeror to 'accept' the terms imposed by the [Surface Transportation Board] within a designated period of time" and an "implementing regulation [that] requires the offeror to accept or reject the terms within ten days").   However, the Summer Fuel Law does not conflict with the Warehousing Act as applied to Ammex through the Withdrawal Statute.   The Summer Fuel Law provides that Ammex, as a "dispensing facilit[y] in Wayne[ County, Michigan]," shall only dispense gas of "7.0 psi" from "June 1 through September 15" of each year.   *See* MCL § 290.650d.   The Withdrawal Statute provides that Ammex, as a duty-free retailer, "may . . . enter[] for warehousing" "any merchandise subject to duty"[4] and may then "withdraw[] for exportation" that merchandise within certain prescribed periods of time "without the payment of duties thereon."   19 U.S.C. § 1557(a)(1).   Ammex, seizing on the "any merchandise" language, argues that the Summer Fuel Law "stands directly at odds with" the Withdrawal Statute because

---

[4]Except "perishable articles and explosive substances other than firecrackers."   19 U.S.C. § 1557(a)(1).

it does not allow Ammex to sell "any merchandise"—it requires Ammex to sell a maximum of 7.0 RVP gasoline in the summer, rather than the 9.0 RVP gasoline Ammex would prefer to sell. Appellant's Br. at 15.

But "[a] close look at [Ammex's] best evidence of a potential conflict turns out to reveal no conflict at all," *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1625 (2018), because Ammex's argument rests upon a fundamental misreading of § 1557(a)(1). The Withdrawal Statute, § 1557, does not grant Ammex, as a duty-free store, the positive *right* to sell all merchandise subject to duty, and certainly does not grant it the right to sell such merchandise in a manner that is free from other federal regulation.[5] The Warehousing Act—and specifically the subsection at issue here, the Withdrawal Statute, entitled "Withdrawal of merchandise; time; payment of charges"—instead describes the way in which Ammex, a duty-free retailer, may enter its merchandise into a bonded warehouse and later withdraw it for "exportation," "transportation," "shipment," or "rewarehousing" *and still preserve the merchandise's duty-free status*. § 1557.

Ammex would like the statute to read: "Duty-free stores may sell, without restriction, any merchandise subject to duty." *See* Appellant's Br. at 17 (summarizing the statute as giving "Ammex, as a duty-free store, the right to sell any merchandise subject to duty of every description.") (internal citations omitted). But that is not what the statute says, and such an interpretation is only possible if the reader ignores several clauses within the text. The statute's first sentence explains that Ammex, as a duty-free store, may "enter[] for warehousing and []

---

[5]The right to sell duty-free merchandise comes instead from § 1555(b)(1), entitled "Duty-Free Sales Enterprises," which provides that "[d]uty-free sales enterprises may sell and deliver for export from the customs territory duty-free merchandise in accordance with this subsection and such regulations as the Secretary may prescribe to carry out this subsection." 19 U.S.C. § 1555(b)(1). The only positive right described in this subsection is the right for certain retailers to sell certain merchandise duty-free under certain conditions, and nothing about this text suggests that that the statute does not contemplate concurrent regulation. To the contrary, another subsection of the rights-granting statute clearly contemplates additional government oversight of duty-free warehouses' ability to sell duty-free merchandise:

> If a State or local or other governmental authority, incident to its jurisdiction over any airport, seaport, or other exit point facility, requires that a concession or other form of approval be obtained from that authority with respect to the operation of a duty-free sales enterprise under which merchandise is delivered to or through such facility for exportation, merchandise incident to such operation may not be withdrawn from a bonded warehouse and transferred to or through such facility unless the operator of the duty-free sales enterprise demonstrates to the Secretary that the concession or approval for the enterprise has been obtained.

*Id.* § 1555(b)(4).

deposit[ing] in a bonded warehouse" all "merchandise subject to duty," except "perishable articles and explosive substances other than firecrackers," at its own expense. § 1557(a)(1). This portion of the statute is clearly not implicated by the Summer Fuel Law, which sets the RVP limit at "dispensing stations"[6] and does not impact the entering and depositing of merchandise in a bonded warehouse. 40 C.F.R. § 52.1170. The second sentence, dealing with "withdraw[al of the merchandise] for exportation," is the key passage. It reads, in its entirety:

> [Any] merchandise [subject to duty] may be withdrawn, at any time within 5 years from the date of importation, or such longer period of time as the Bureau of Customs and Border Protection may at its discretion permit upon proper request being filed and good cause shown, *for consumption upon payment of the duties and charges accruing thereon at the rate of duty imposed by law upon such merchandise at the date of withdrawal*; or *may be withdrawn for exportation or for transportation and exportation to a foreign country*, or for shipment or for transportation and shipment to [certain destinations], *without the payment of duties thereon*, or for transportation and rewarehousing at another port or elsewhere, or for transfer to another bonded warehouse at the same port; except that [certain other restrictions apply].

19 U.S.C. § 1557(a)(1) (emphasis added). Thus, the clear meaning of this second sentence is: Within five years of importing any merchandise subject to duty, Ammex may withdraw that merchandise for domestic consumption if it pays applicable duties and charges; alternatively, Ammex may withdraw its merchandise for international exportation within that same timeframe without having to pay such duties. *See id.* Nowhere in this text is there a clear grant to duty-free warehouses of the right to remove all dutiable goods without further restriction. The statutory context supports this reading. The title of this statute—"Entry for warehouse"—and subtitle of this section—"Withdrawal of merchandise; time; payment of charges"—suggest that the text does not convey a positive grant of rights, but instead provides a detailed, administrative explanation of the guidelines determining when, and if, duties must be paid upon entry and withdrawal of the merchandise into bonded warehouses. *See id.; see also Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) ("[S]tatutory titles and section headings are tools available for the resolution of a doubt about the meaning of a statute.")

---

[6]Another portion of Michigan's House Bill 5508, also incorporated into federal law, clarifies that the prohibitions extend to "knowingly sell[ing], dispens[ing], or offer[ing] for sale gasoline, diesel fuel, biodiesel, biodiesel fuel, or hydrogen fuel" that does not meet the Summer Fuel Law's requirements. MCL § 290.645(4) (incorporated into federal law at 40 C.F.R. § 52.1170).

(internal citation omitted); *see Abramski v. United States*, 573 U.S. 169, 179 n.6 (2014) (we need "not interpret each [sentence] in [the] statute with blinders on, refusing to look at the [sentence's] function within the broader statutory context").

Ammex relies heavily on a 2000 Court of International Trade (CIT) case, *Ammex I*. *Ammex I* involved Ammex's challenge to CBP's 1998 decision "that the activities of duty-free stores should not be extended to cover 'unidentifiable fungible' goods, such as gasoline and diesel fuel, when sold on a retail basis" because such merchandise "could not be subject to marking or other identification under 19 U.S.C. § 1555(b)(3)(D)," which would result in CBP having "no practical way of ensuring that the duty-free gasoline was 'declared' when vehicles returned to the United States." 24 C.I.T. at 851. In concluding that CBP acted unlawfully in prohibiting Ammex from selling gasoline duty-free, the CIT found, first, that CBP had incorrectly interpreted § 1555(b)(3)(D) as permitting it to refuse to extend "the activities of duty-free stores [] to unidentifiable fungibles" when "nothing in the language or history of this provision authorizes [CBP] to prohibit the sale of certain merchandise outright," *id.* at 852, 856; and, second, that "Section 1557(a)(1) provides that all types of dutiable merchandise may be sold from bonded warehouses, including duty-free stores, and it was error for the government to read into 19 U.S.C. § 1555(b)(3)(D) and (E) an exception beyond those specifically stated in § 1557(a)(1)." *Id.* at 856–57 (holding that an adverse interpretation "is directly contrary to Congress' intent, as evidenced in the relevant conference report, that [CBP] impose the least restrictions possible on the sale of duty-free merchandise").

Ammex has repeatedly cited that final sentence in support of its argument that § 1557(a)(1) demonstrates "Congress's desire to create a duty-free industry with as few restrictions as possible." *See, e.g.*, Reply at 8; Appellant's Br. at 28. But this reads too much into *Ammex I*. The CIT explained that Congress intended "[*CBP* to] impose the least restrictions possible on the sale of *duty-free merchandise*," which is consistent with its ruling that *CBP* could not prohibit Ammex from selling gasoline *duty-free* when gasoline was otherwise included within the ambit of § 1557. *See Ammex I*, 24 C.I.T. at 856 (emphasis added) (citation omitted).

*Ammex I* does not stand for the proposition that § 1557 can be wielded to strike down regulation of sales activities having nothing to do with whether merchandise can be sold duty-free.**7**

Accordingly, because the Withdrawal Statute allows Ammex to sell gas duty-free under certain conditions, and because the Summer Fuel Law does not impact Ammex's ability to sell gas duty-free, there is no conflict between these laws. *Cf. R.J. Reynolds Tobacco Co.*, 479 U.S. at 150 (holding that states may impose nondiscriminatory property taxes on imported goods stored in customs-bonded warehouses and noting that there is "no reason why state taxation on such goods would interfere with *the primary benefit to be given the importer—deferral of the duties*, and the Federal Government's concern with collecting its customs duties") (emphasis added).

**2.**

A final note. Even if we were to accept Ammex's insistence that the Withdrawal Statute grants it the positive right to sell, duty-free, "any merchandise subject to duty" "of every description," Appellant's Br. at 17, it is not clear that 7.0 RVP gasoline should be considered merchandise distinct from 9.0 RVP gasoline under either the Withdrawal Statute or the Harmonized Tariff Schedule.

As to the Withdrawal Statute, the district court explained in its order denying Ammex's preliminary injunction:

> As an initial matter, the Court does not understand § 1557(a)(1) to regulate at the level of granularity that Ammex thinks it does. Ammex reads § 1557(a)(1) as not only permitting it to sell every good (other than perishables and explosives) but

---

**7**Ammex also briefly notes that "[CBP] has long operated under the assumption that customs-bonded warehouses can accept products that would not be legal for sale in the domestic market." Appellant's Br. at 25 (citing United States Customs Ruling Letter, HQ W231173 (Mar. 24, 2006) (holding that "central air conditioners and other equipment covered by the Department of Energy SEER [Seasonal Energy Efficiency Ratio] standards that are not in compliance with those standards can be imported into the United States for export")). However, the Ruling Letter that Ammex cites is irrelevant to this case. The Ruling Letter notes that noncompliant air conditioners could be imported, stored in bonded warehouses, and exported "under 42 U.S.C. § 6301, [which provides that] any covered product offered for importation in violation of DOE energy conservation standards 'shall be refused admission into the customs territory of the United States under rules issued by the Secretary of the Treasury, except that the Secretary of the Treasury may, by such rules, authorize the importation of such covered product upon such terms and conditions . . . to ensure that such covered product . . . will be exported or abandoned to the United States.'" HQ W231173 (quoting 42 U.S.C. § 6301). Neither party has argued that § 6301 applies to this case.

every variety of every good. It is not enough that § 1557(a)(1) permits Ammex to sell gasoline, in Ammex's view the statute permits it to sell [7.0 RVP] gasoline. But the statute speaks of classes of goods (perishables)[,] not specific goods (strawberries)[,] let alone a specific variety of a specific good (California strawberries).

. . .

A hypothetical leads to a similar reading of § 1557(a)(1). If a statute said, "any vehicles, with the exception of military vehicles, may be sold at a car dealership," no one would think that the statute authorizes car dealers to sell vehicles without legally-required safety features (e.g., airbags). *See* 49 C.F.R. § 571.208; 49 C.F.R. § 571.101 *et seq*. That is, if a car dealer sold cars without airbags, it would be no defense for the dealership to say, "but the law says that 'any vehicles, with the exception of military vehicles, may be sold at a car dealership' and cars without airbags are a type of vehicle."

Here, the Summer-Fuel Laws do not preclude Ammex from selling a good. It may sell gasoline. The Summer-Fuel Laws at most preclude Ammex from selling a variety of gasoline, namely gasoline with a RVP above 7.0 psi. Or, viewed slightly differently, the Summer-Fuel Laws are like the airbags in the hypothetical, they ensure that a good meets a certain quality or safety standard. Either way, the Summer-Fuel Laws are not contrary to what Congress has said in § 1557(a)(1).

Op. and Order Denying Pl.'s Mot. for Prelim. Inj., R. 34, PID 914–15. The district court's observation and hypothetical are persuasive. Ammex responds to MDARD's version of this argument by reiterating that the CBP definition of "merchandise" is broad, as it encompasses "goods, wares, and chattels of every description." Reply at 3 (quoting 19 U.S.C. §§ 1401(c), 1557(a)(1)). But Ammex's arguments struggle to overcome an additional hurdle: the gasoline that Ammex sells duty-free must itself be "subject to duty" as determined by the descriptions in the Harmonized Tariff Schedule. §§ 1500(b); 1557(a)(1). And the Harmonized Tariff Schedule does not differentiate among RVP levels in its listing for dutiable gasoline and motor fuels. *Id.* § 1202, United States International Trade Commission, Harmonized Tariff Schedule of the United States, subheading 2710 27-5–16 (2022), https://hts.usitc.gov/current. Accordingly, even if Ammex is correct that the Withdrawal Statute authorizes it to sell duty-free merchandise "of every description," it is not clear that 9.0 RVP gasoline would fall under a different dutiable

description, for customs purposes, than 7.0 RVP gasoline.[8]   Thus, even assuming that the Withdrawal Statute grants Ammex the positive right to sell duty-free merchandise "of every description," Ammex has not demonstrated that either the Withdrawal Statute or the Harmonized Tariff Schedule would consider 9.0 RVP gas to be of a different "description" than 7.0 RVP gas.

**III.**

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[8]Ammex warns that if this reasoning carries the day, "the state could impose any number of limitations on the products Ammex can sell through its duty-free store under the guise of public health regulations as long as the state was imposing restrictions on the types of goods sold, rather than a class of goods as a whole." Reply at 7–8 (noting that such a system could detrimentally impact its exports to Canada and result in "Congress's desire to create a duty-free industry with as few restrictions as possible [] suffer[ing] a death by a thousand cuts") (citing *Ammex I*, 24 C.I.T at 856).

But Ammex's concern is, once again, premised on a misunderstanding of the scope of § 1557 and of Congress's goals in creating duty-free warehouses. Concurrent regulation, applied to a scheme that encourages it, is not "death by a thousand cuts."

———————————

**CONCURRENCE**

———————————

JOHN K. BUSH, Circuit Judge, concurring.  I write separately because I would hold that the Summer Fuel Law is a state law for the reasons I set forth in *Ammex II*.  *See Ammex II*, 936 F.3d at 365–369 (Bush, J., concurring in the judgment).  However, our majority held that the Summer Fuel Law is a federal law.  *Id.* at 362–63.  Therefore, under our precedent, I agree with the majority's analysis and judgment here.