RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0057p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

BNA Associates LLC,

           *Plaintiff-Appellant*,

    *v.*

Goldman Sachs Specialty Lending Group, L.P.,

           *Defendant-Appellee*.

> No. 22-5491

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:21-cv-00481—Waverly D. Crenshaw, Jr., District Judge.

Argued: December 6, 2022

Decided and Filed: March 29, 2023

Before: READLER, MURPHY, and MATHIS, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Paul J. Krog, BULSO PLC, Brentwood, Tennessee, for Appellant. David R. Fine, K&L GATES LLP, Harrisburg, Pennsylvania, for Appellee. **ON BRIEF:** Paul J. Krog, Eric W. Smith, BULSO PLC, Brentwood, Tennessee, for Appellant. David R. Fine, K&L GATES LLP, Harrisburg, Pennsylvania, Jason W. Callen, Charles I. Malone, K&L GATES LLP, Nashville, Tennessee, for Appellee.

───────────────

## OPINION

───────────────

CHAD A. READLER, Circuit Judge. Ruby Tuesday, a restaurant proprietor, leased property in Maryville, Tennessee to support its corporate operations. The company thought it had said goodbye to the property when it agreed to transfer its interest to BNA Associates, a real estate developer. But a new day brought a new development. As a debtor to Goldman Sachs,

Ruby Tuesday, per the parties' credit agreement, was required to get Goldman's consent before transferring any property subject to the agreement. And when Goldman refused to consent, Ruby Tuesday and BNA missed out on closing their deal. Unable to put its name on the property, BNA sued Goldman, alleging intentional interference with business relations under Tennessee law. The district court dismissed BNA's complaint. We affirm.

**I.**

Maryville, Tennessee is home to Ruby Tuesday, a casual dining chain with restaurants around the country. Maryville is also home to Maryville College, a liberal arts school. Maryville College owns a storied mansion nestled in the campus woods. The school leased the home to Ruby Tuesday, which used it for corporate retreats. When the company ran into financial headwinds years later, Ruby Tuesday decided to sell its interest in the lease. BNA Associates, a real estate developer known for projects involving distinct properties, took interest. Before long, BNA and Ruby Tuesday signed a purchase and sale agreement, which, if the deal came to fruition, would give BNA a right to the leased property.

But the parties could not consummate the deal on their own. By way of background, Ruby Tuesday had secured a loan from Goldman Sachs three years earlier. The loan's terms, according to BNA's complaint, prevented Ruby Tuesday from selling its interest in the Maryville College lease without Goldman's consent. This provision in the credit agreement was no secret—BNA's purchase and sale agreement with Ruby Tuesday stated (in all-caps and bold font) that Ruby Tuesday "must obtain approval from [Goldman] for the transaction." To BNA's dismay, Goldman refused to approve. Adding salt to the wound, the lease later ended up in Goldman's hands after Ruby Tuesday's eventual bankruptcy.

BNA viewed Goldman's lack of cooperation as tortious. So it sued Goldman. At issue here is BNA's claim under Tennessee law for intentional interference with business relations (IIBR). To put forth a viable IIBR claim, BNA had to adequately plead (1) an existing business relationship with Ruby Tuesday, (2) Goldman's knowledge of that relationship, (3) Goldman's intent to cause a breach or termination of the relationship, (4) Goldman's improper motive or

improper means, and (5) damages from the tortious interference. *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002).

Goldman moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). According to Goldman, BNA's pleading did not satisfy the tort's fourth prong: improper motive or means. To that end, BNA conceded that it did not plead an improper motive theory. And as to an improper means theory, Goldman contended its conduct could not be deemed improper when the company simply invoked its contractual right to refuse consent. Goldman also argued that the IIBR claim failed the first prong because the tort does not apply to instances where the relationship at issue was committed to contract, as was BNA's relationship with Ruby Tuesday. The district court dismissed the claim on the improper means ground. BNA appealed.

## II.

We review a dismissal under Rule 12(b)(6) de novo. *Ammex, Inc. v. McDowell*, 24 F.4th 1072, 1079 (6th Cir. 2022). Viewing the complaint in the light most favorable to BNA and accepting well-pleaded factual allegations as true, we ask whether the complaint states a claim that is plausible on its face. *Id.* Although the district court dismissed the complaint on the improper means prong, we can affirm on any basis supported by the record. *EA Mgmt. v. JP Morgan Chase Bank, N.A.*, 655 F.3d 573, 575 (6th Cir. 2011).

Tennessee's intentional interference with business relations tort has a confined scope. Consistent with the tort's first prong, the law applies in settings such as "prospective contractual relations" or "customary relationship[s] not amounting to a formal contract." *Trau-Med*, 71 S.W.3d at 701 n.4 (citing Restatement (Second) of Torts § 766B cmt. c (Am. L. Inst. 1979)) (emphasis omitted). It does not reach relationships that have been reduced to a contract, "current or prior." *Clear Water Partners, LLC v. Benson*, No. E2016-00442-COA-R3-CV, 2017 WL 376391, at *7 (Tenn. Ct. App. Jan. 26, 2017). The gist of an IIBR claim is that the plaintiff's non-contractual business relationship with another was intentionally interfered with by a third party, the purported tortfeasor. *Trau-Med*, 71 S.W.3d at 698–701. If the third party tortiously interfered with that relationship, it can be liable for the resulting damages. *Id.* at 701.

BNA pleaded that Goldman interfered with BNA and Ruby Tuesday's purchase and sale agreement. But as IIBR does not apply to "contractual relationship[s]," it is inapplicable to Goldman's purported interference with the contract between BNA and Ruby Tuesday. *Crouch v. Pepperidge Farm, Inc.*, 424 F. App'x 456, 461 (6th Cir. 2011) (citing *Trau-Med*, 71 S.W.3d at 698–701 & n.4). BNA also makes no claim that Goldman interfered with any potential relationship between BNA and Maryville College, the property owner, so we need not consider this forfeited theory. *Cf. Clear Water*, 2017 WL 376391, at *6–7; *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005) ("[F]ailure to raise an argument . . . [forfeits] the argument on appeal.").

BNA has a different view. To its mind, there is "no sensible reason" for distinguishing between tortious conduct aimed at terminable at will, as opposed to prospective, contracts. But BNA did not have a terminable at will contract with Ruby Tuesday. And meritorious or not, that is a complaint best made to Tennessee legislators and legal tribunals, not us. Then again, the Volunteer State may have already answered the call. After all, parties who suffer contractual interference are not wholly without relief under Tennessee law. They might state a claim for a different tort: inducement of breach of contract. *See Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 174 (Tenn. Ct. App. 2007); Tenn. Code Ann. § 47-50-109.

Equally unavailing is the case law put forward by BNA. Most of those decisions are not from Tennessee courts. Beyond that threshold hurdle, BNA's cases are not persuasive. One, *Reeves v. Hanlon*, addressed an at-will employment relationship, something not at issue here. 95 P.3d 513, 519 (Cal. 2004); *see also Forrester v. Stockstill*, 869 S.W.2d 328, 330–31 (Tenn. 1994). Another, *Maximus Inc. v. Lockheed Info. Mgmt. Sys. Co.*, involved an allegation that the plaintiff's attempt to win a state contract was improperly thwarted by a third party, giving rise to an IIBR-type claim. 493 S.E.2d 375, 377–78 (Va. 1997). But here, BNA successfully signed the contract with Ruby Tuesday.

Even if we agreed with BNA that IIBR applies in this contractual setting, it is difficult to see how BNA adequately pleaded the tort's fourth prong—that Goldman acted through improper means. Tennessee courts define "improper means" to include "methods that violate an

established standard of a trade or profession" and "sharp dealing, overreaching, or unfair competition." *Trau-Med*, 71 S.W.3d at 701 n.5. At the same time, "the tort should not be interpreted in such a way as to prohibit or undermine the ability to contract freely and engage in competition." *Watson's Carpet*, 247 S.W.3d at 178. Yet that seems to be just what BNA is asking us to do—undermine free competition by holding Goldman liable for simply invoking its contractual right to block Ruby Tuesday from transferring its assets. Goldman was perhaps playing hardball. Any rational actor would likely have done the same, were it in their perceived best interest. *See, e.g.*, Donald J. Kochan, *Corporate Social Responsibility in a Remedy-Seeking Society: A Public Choice Perspective*, 17 Chapman L. Rev. 413, 424 (2014). But this and similar negotiating tactics are ubiquitous in the business world. And Goldman's tack was especially unobjectionable considering the veto power afforded it by the credit agreement. Far more, it seems, is needed to plead tortious conduct. *See, e.g.*, *Clear Water Partners*, 2017 WL 376391, at *5, 7.

*     *     *     *     *

We affirm the judgment of the district court.